IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | | |
|---|---|---|
| JESUS C. HERNANDEZ, *et al.*, <br> Plaintiffs, | § § § | |
| v. | § | EP-11-CV-331-DB |
| JESUS MESA, JR., *et al.* <br> Defendants. | § § § § | |

## MEMORANDUM OPINION AND ORDER

On this day, the Court considered Defendant Jesus Mesa, Jr.'s "First Amended FRCP 12(b)(6) Motion to Dismiss" ("Motion to Dismiss"), filed in the above-captioned cause on August 11, 2011. Also before the Court is Plaintiffs Jesus C. Hernandez, *et al.*'s Response, filed on August 22, 2011. For the reasons that follow, the Court finds that the instant Motion should be granted.

## BACKGROUND AND PROCEDURAL POSTURE

The tragic facts in this case are well known; as such, the Court provides only a brief summary here. On June 7, 2010, fifteen-year old Sergio Adrián Hernández Güereca ("Decedent")—while standing on the Mexican side of the border separating the United States and Mexico—was shot to death by United States Border Patrol Agent Jesus Mesa, Jr. ("Agent Mesa"), who was standing on the American side of the border when the incident occurred. Plaintiffs filed their Original Complaint under cause number EP-11-CV-027-DB in early January 2011, alleging claims against the United States of America ("the United States") and various federal agencies under the Federal Tort Claims Act ("FTCA"), the Alien Tort Statute ("ATS"), and the United States Constitution ("the Constitution"). Moreover, Plaintiffs alleged claims against unknown border patrol agents under the Constitution.

On June 8, 2011, Plaintiffs filed an Amended Complaint, and on June 27, 2011, Plaintiffs filed their Second Amended Complaint. On August 11, 2011, the Court entered an Order dismissing and severing all claims against the United States from the instant action. The same day, the Court entered final judgment pursuant to Federal Rule of Civil Procedure 58. On August 15, 2011, the Court entered an amended final judgment, dismissing Plaintiffs' claims against the United States with prejudice.

On August 22, 2011, Plaintiffs filed their Third Amended Complaint. The Third Amended Complaint raises allegations against Defendants Ramiro Cordero, Scott A. Luck, Victor Manjarrez, Jr., and Carla L. Provost. As to Agent Mesa, the Third Amended Complaint alleges that Agent Mesa acted unreasonably by using excessive, deadly force against Decedent in violation of the Fourth and Fifth Amendments to the Constitution pursuant to *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971) ("*Bivens* claims"). Specifically, Plaintiffs alleges that "Mesa shot Decedent . . . while attempting to apprehend him . . . on suspicion of illegal entry into the United States." Agent Mesa's Motion to dismiss followed.

## LEGAL STANDARD

### A. Federal Rule of Civil Procedure 12(b)(6)

Defendant files the instant Motion under Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)"). To determine whether a claim survives a Rule 12(b)(6) motion, courts engage in a two-step analysis. *See Ashcroft v. Iqbal,* __U.S.__, 129 S.Ct. 1937, 1948-50 (2009); *see also Edwards v. A.H. Cornell & Son, Inc.*, 610 F.3d 217, 219 (3d Cir. 2010). First, courts review the complaint, separating assertions of fact from legal conclusions. *See id.* "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal

conclusions." *Iqbal*, 129 S.Ct. at 1949. Moreover, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Second, courts determine "whether the facts alleged in the complaint are sufficient to show that the plaintiff has a plausible claim for relief." *Edwards*, 610 F.3d at 219 (internal quotations omitted). Whether a claim is plausible is context-specific, requiring "the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 129 S.Ct. at 1950.

## B. Federal *Bivens* Actions

Pursuant to *Bivens* "the victim of a Fourth Amendment violation by federal officers acting under color of their authority may bring suit for money damages against the officers in federal court." *Schweiker v. Chilicky*, 487 U.S. 412, 421 (1988). Since deciding *Bivens*, the Supreme Court has recognized a cause of action for damages against federal officers for violations of the Fifth Amendment as well. *Davis v. Passman*, 442 U.S. 228 (1979). *Bivens* actions are akin to those brought under 42 U.S.C. § 1983.[1] *Andrade v. Chojnacki*, 65 F. Supp. 2d 431, 452 (W.D. Tex. 1999). Therefore, as with cases brought under § 1983, the defense of qualified immunity is also available to federal officers sued under *Bivens*. *Id.*

"The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgeral*, 457 U.S. 800, 818 (1982)). To resolve government officials' qualified immunity claims, courts engage in a two-step inquiry. *See Saucier v. Katz*, 533 U.S. 194, 201 (2001) (overturned on other grounds). First, a court

---

[1] Section 1983 provides a cause of action against persons acting under color of state law for actions that violate a right secured by the Constitution or federal statute. 42 U.S.C.A. § 1983 (West 2003).

determines whether "[t]aken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" *Id.* Second, a court determines "whether the right was clearly established . . . undertaken in light of the specific context of the case." *Id.* Courts, however, are "permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson*, 555 U.S. at 236.

## DISCUSSION

In the instant Motion, Agent Mesa's argument is based solely on the first step of the two-pronged qualified immunity inquiry: do the facts alleged show that the officer's conduct violated a constitutional right? Specifically, Agent Mesa argues that he is entitled to qualified immunity because Decedent was neither protected by the Fourth nor the Fifth Amendments to the Constitution. The Court addresses Agent Mesa's arguments as to Plaintiffs' Fourth Amendment claim before turning to those responding to Plaintiffs' Fifth Amendment claim.

### A. Plaintiffs' Fourth Amendment Claim

Here, Agent Mesa argues that he is entitled to qualified immunity because Decedent was an alien without voluntary attachments to the United States, who never entered the country, and because the Supreme Court held in *United States v. Verdugo-Urquidez*, 494 U.S. 259 (1990), that an alien with no voluntary attachment to the United States has no extraterritorial Fourth Amendments rights. In response, Plaintiffs argue that *Martinez-Aguero v. Gonzales*, 459 F.3d 618 (5th Cir. 2006), demands the extraterritorial application of the Fourth Amendment for excessive force inflicted by United States border patrol officers at ports of entry. The Court evaluates these arguments below.

The Fourth Amendment provides in relevant part that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated . . . ." U.S. CONST. amend. IV. "[A]*ll* claims that law enforcement officers have used excessive force—deadly or not—in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard, rather than under a 'substantive due process' approach." *Graham v. Connor*, 490 U.S. 386, 395 (1989) (emphasis in original). Nevertheless, the Supreme Court has restricted the Fourth Amendment's reach based on the citizenship of the person claiming its protections and based on whether the alleged violation of the Fourth Amendment occurred within the territory of the United States or abroad.

In *United States v. Verdugo-Urquidez*, United States Drug Enforcement Agency ("DEA") officers, working in conjunction with Mexican federal police, seized incriminating documents from the Mexican residences of a criminal defendant. 494 U.S. at 262-63. The district court granted the defendant's motion to suppress, holding that "the Fourth Amendment applied to the searches and that the DEA agents had failed to justify searching [the defendant's] premises without a warrant." *Id.* at 263. The court of appeals affirmed. *Id.* The Supreme Court reversed, holding that that "the Fourth Amendment has no application" where "[a]t the time of the search, [the individual seeking its protections] was a citizen and resident of Mexico with no voluntary attachment to the United States, and the place searched was located in Mexico." *Id.* at 274-75.

Here, Agent Mesa asks the Court to dismiss Plaintiffs' Fourth Amendment claim given the Supreme Court's holding in *Verdugo-Urquidez*. Indeed, it is undisputed that Decedent—a resident and citizen of Mexico—was an alien, without voluntary ties to the United

States, standing in Mexico when he was killed. Nevertheless, Plaintiffs argue that *Martinez-Aguero* demands the extraterritorial application of the Fourth Amendment for excessive force inflicted by United States border patrol officers at ports of entry. In *Martinez-Aguero*, a Mexican citizen and resident who accompanied her aunt once a month to the Social Security office in El Paso, Texas was stopped by United States immigration officials at the border "within the zone outside the port of entry but within the territorial United States." 459 F.3d at 620. An immigration official "grabbed [the Mexican national's] arms, twisted them behind her back, pushed her into a concrete barrier, which hit her in the stomach and then started kicking her with his [the immigration officer's] knees in her lower back." *Id.* at 621 (internal quotations omitted). The plaintiff brought a claim under the Fourth and Fifth Amendments for excessive use of force. *Id.* The district court denied the officer's motion for summary judgment on the issue of qualified immunity and the United States Court of Appeals for the Fifth Circuit ("the Fifth Circuit") affirmed. *Id.* On appeal, the defendant argued that the plaintiff lacked constitutional rights because although she was in the territorial United States when the incident occurred, she had not been admitted into the country, and as such, the "entry-fiction" doctrine required the court to treat the incident as if it had occurred in Mexico. *Id.* at 622, 623. Nevertheless, the Fifth Circuit found that the entry-fiction doctrine only applied in immigration and deportation cases and proceeded to determine whether the plaintiff had sufficient voluntary connections to the country. *Id.* 624. The Fifth Circuit affirmed the district court's decision, finding that the plaintiff had sufficient voluntary contacts because "her regular and lawful entry into the United States pursuant to a valid border-crossing card and her acquiescence in the U.S. system of immigration constitute her voluntary acceptance of societal obligations, rising to the level of 'substantial connections.'" *Id.*

The instant case can be distinguished from *Martinez-Aguero*. Unlike *Martinez-Aguero*, where the plaintiff was in the territorial United States when the incident occurred, it is undisputed that, in this case, Decedent was outside the United States when shot. Moreover, unlike *Martinez-Aguero*, where the Fifth Circuit found that the plaintiff had voluntary connections, here, Plaintiffs plead nothing in the Third Amendment Complaint to indicate that Decedent had any voluntary connections to the United States. The Court notes that under the heading "Sergio was Entitled to Fifth Amendment Due Process of Law," Plaintiffs' Response briefly states that "Mesa ignores the most obviously sufficient connection between Sergio and the United States, the connection supplied by Mesa himself: Sergio was killed by the actions of a United States government employee acting within the scope of his U.S. government employment." Nevertheless, while this may be a tragic connection to this country, it was not voluntary, and voluntary connections are dispositive in determining whether an alien outside the United States can avail himself of the Fourth Amendment's protections. Finally, the Court briefly addresses Plaintiffs' suggestion that *Boumediene v. Bush*, 553 U.S. 723 (2008), overturned *Verdugo-Urquidez*.

In short, Plaintiffs argue that after *Boumediene*, any notion that the Constitution does not apply extraterritorially to non-citizens is untenable because the Supreme Court in *Boumediene* held that aliens detained in Guantanamo Bay, Cuba had the constitutional privilege of habeas corpus. 553 U.S. at 732. Nevertheless, *Boumediene* is inapposite as its holding says nothing of the Fourth Amendment right against unreasonable searches and seizures. Without more, the Court finds that Plaintiffs' Fourth Amendment claim against Agent Mesa is dismissed. The Court now turns to Agent Mesa's argument under the Fifth Amendment.

**B. *Fifth Amendment Claim***

In his Motion, Agent Mesa petitions the Court to dismiss Plaintiffs' substantive due process claim under the Fifth Amendment, arguing that aliens have no extraterritorial Fifth Amendment rights. To support his argument, Agent Mesa cites to dicta in *Verdugo-Urquidez*, wherein the Supreme Court states as follows:

> The [*Johnson v.*] *Eisentrager*[, 330 U.S. 763 (1950)] opinion acknowledged that in some cases constitutional provisions extend beyond the citizenry: the alien has been accorded a generous and ascending scale of rights as he increases his identity with our society. [] But our rejection of extraterritorial application of the Fifth Amendment was emphatic.

494 U.S. at 269 (internal quotations omitted). In response, Plaintiffs argue that *Boumediene* "decisively rejected the argument . . . that the Constitution stops where *de jure* sovereignty ends." In other words, Plaintiffs contend that because the Supreme Court once found that a Constitutional right applies outside the United States, this Court should find that other constitutional rights also apply extraterritorially. Nevertheless, the Court need not determine whether the Fifth Amendment applies extraterritorial to a person in Decedent's shoes, because as explained below, Plaintiffs otherwise fail to state a claim for which relief can be granted under the facts presented.

The Fifth Amendment to the Constitution provides in relevant part that "[n]o person shall . . . be deprived of life, liberty, or property, without due process of law." U.S. CONST. amend. V. Nevertheless, as mentioned above, "*all* claims that law enforcement officers have used excessive force—deadly or not—in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard, rather than under a 'substantive due process' approach." *Graham*, 490 U.S. at 395. While "[n]ot all encounters between law enforcement officers and citizens are

seizures for purposes of the Fourth Amendment," a seizure occurs "when the officer, by means of physical force or show of authority, has in some way restrained the liberty of the citizen." *United States v. Mask*, 330 F.3d 330, 336 (5th Cir. 2003) (internal quotations omitted). Here, Agent Mesa's use of force against Decedent amounted to a seizure, as an "[a]pprehension by the use of deadly force is a seizure." *Carnaby v. City of Houston*, 636 F.3d 183, 187 (5th Cir. 2011). Therefore, under *Graham*, Plaintiffs fail to state a claim under the Fifth Amendment's Due Process Clause, and the Court finds that Plaintiffs' Fifth Amendment claim against Agent Mesa should be dismissed.

## CONCLUSION

The Court finds that Plaintiffs' Fourth and Fifth Amendment claims against Agent Mesa should be dismissed. First, Plaintiffs' Fourth Amendment claim against Agent Mesa is foreclosed by *Verdugo-Urquidez*. Decedent has no Fourth Amendment protections because he is an alien with no voluntary ties to the United States who was in Mexico when the incident occurred. Second, claims for excessive use of force are properly brought under the Fourth Amendment and not the Fifth Amendment. Therefore, Plaintiffs fail to state a claim under the Fifth Amendment.

Accordingly, **IT HEREBY ORDERED** that Defendant Jesus Mesa, Jr.'s "First Amended FRCP 12(b)(6) Motion to Dismiss" is **GRANTED**.

**SIGNED** this **17th** day of **February, 2012**.

_____
THE HONORABLE DAVID BRIONES
SENIOR UNITED STATES DISTRICT JUDGE